**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| JOHN C. LONG III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13CV0659 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, John C. Long III, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 12, 14). For the reasons that follow, the Court should enter judgment for Defendant.

**I. PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on July 14, 2009 (protective filing date), alleging a disability onset date of December 12, 2007. (Tr. 184-85.)[1] He subsequently amended the

---

[1] Plaintiff also apparently applied for Supplemental Security Income ("SSI"), but did not qualify due to his financial resources. (See Tr. 66-67.)

alleged onset date to January 29, 2008. (Tr. 186-87.) Upon denial of Plaintiff's application initially (Tr. 68-69) and on reconsideration (Tr. 70), he requested a hearing de novo before an Administrative Law Judge ("ALJ").[2] Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 33-65.) By decision dated March 23, 2012, the ALJ determined that Plaintiff was not disabled under the Act. (Tr. 20-32.) On June 10, 2013, the Appeals Council denied Plaintiff's request for review (Tr. 1-4), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.   [Plaintiff] has not engaged in substantial gainful activity since January 29, 2008, the amended alleged onset date.

.  .  .  .

2.   [Plaintiff] has the following severe impairments: neurosis; myofascial syndrome; degenerative disc disease and radiculopathy of the lumbar spine; inguinal pain secondary to inguinal hernia, status post right inguinal repair; and cervicalgia secondary to right foraminal disc extrusion at C5-6.

.  .  .  .

---

[2] The index to the administrative record lists Plaintiff's Request for Hearing at pages 95 and 96 of the record (see Docket Entry 8-2 at 1); however, neither the electronically-filed record nor the Court's paper copy contains pages 71 through 183 of the record. According to the index, the missing pages consist of procedural/jurisdictional documents such as Plaintiff's request for reconsideration and request for hearing, as well as the resume of the VE. (Id.) The parties neither have objected to the missing pages nor have raised an issue on judicial review that would rely in any material way on the contents of these missing documents. (See generally Docket Entries 13, 15.)

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . . .

4. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except he requires the ability to alternate between sitting and standing at will. He is limited to occasional climbing, balancing, stooping, bending, crouching, crawling, and overhead reaching, but should avoid hazards. Mentally, he is capable of working at a non-production pace with no complex decision-making, no constant changes in work setting, and no dealing with crises. He can have no contact with the public, but can have contact with co-workers and supervisors.

. . . .

5. [Plaintiff] is unable to perform any past relevant work.

. . . .

9. . . . [T]here are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . . .

10. [Plaintiff] has not been under a disability, as defined in the [] Act, from January 29, 2008, through the date of this decision.

(Tr. 25-32 (internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope

of [the Court's] review of [such a] decision . . . is extremely
limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead,
the Court "must uphold the factual findings of the ALJ [underlying
the denial of benefits] if they are supported by substantial
evidence and were reached through application of the correct legal
standard." Hines, 453 F.3d at 561 (internal brackets and quotation
marks omitted). "Substantial evidence means 'such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir.
1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).
"It consists of more than a mere scintilla of evidence but may be
somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d
171, 176 (4th Cir. 2001) (internal citations and quotation marks
omitted). "If there is evidence to justify a refusal to direct a
verdict were the case before a jury, then there is substantial
evidence." Hunter, 993 F.2d at 34 (internal quotation marks
omitted).

"In reviewing for substantial evidence, the [C]ourt should not
undertake to re-weigh conflicting evidence, make credibility
determinations, or substitute its judgment for that of the [ALJ, as
adopted by the Social Security Commissioner]." Mastro, 270 F.3d at

4

176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational

[3]  The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." <u>Id.</u> "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." <u>Id.</u> (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." <u>Albright v. Comm'r of the Soc. Sec. Admin.</u>, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." <u>Bennett v. Sullivan</u>, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." <u>Mastro</u>,

---

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." <u>Hunter</u>, 993 F.2d at 35 (internal citations omitted).

270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[6] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at

## B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

1) the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain (Docket Entry 13 at 3-6);

(2) the ALJ erred at step three of the SEP by failing to discuss whether Plaintiff's impairments met or equaled all applicable listings (id. at 6-8); and

(3) in formulating Plaintiff's RFC, the ALJ erred by failing to discuss the third party function report completed by Plaintiff's mother (id. at 8-10).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 15 at 6-19.)

## 1. Subjective Complaints of Pain

Plaintiff first contends that the ALJ erred in evaluating his subjective complaints of pain. (Id. at 3-6.) Specifically, Plaintiff claims that the ALJ "completely disregard[ed] [his] statements as to the effects of his chronic pain" in violation of Fourth Circuit precedent. (Docket Entry 13 at 3 (citing Hines, 453 F.3d at 563).) In particular, Plaintiff contends that because the ALJ found that Plaintiff had impairments that could cause his

---

steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

alleged pain, the ALJ must have "ignored" Plaintiff's testimony regarding the intensity of his pain and "pluck[ed] out portions of medical records to support her conclusion" that his pain did not qualify as disabling. (Id. at 5.) This argument lacks merit.

As an initial matter, Plaintiff "bears the burden of establishing [his] impairments and the resulting limitations on [his] ability to perform work." Donnell v. Astrue, No. 1:09CV308, 2010 WL 3911425, at *3 (M.D.N.C. Oct. 5, 2010) (unpublished) (Dixon, M.J.), recommendation adopted, slip op. (M.D.N.C. Nov. 5, 2010) (Schroeder, J.). In order to successfully challenge the ALJ's analysis of Plaintiff's subjective complaints of pain, Plaintiff must show how a proper credibility analysis would have resulted in additional functional limitations in the RFC and how that RFC would impact the ALJ's ultimate conclusion regarding Plaintiff's ability to perform the jobs cited by the VE. See McAnally v. Astrue, 241 F. App'x. 515, 518 (10th Cir. 2007) ("[W]e agree with the magistrate that, '[w]ith regard to [her] hypertension, loss of vision or skin problems, the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC [assessment] or discuss any evidence that would support the inclusion of any limitation.'"); Miles v. Astrue, No. 8:07-3164-RBH, 2009 WL 890651, at *14 (D.S.C. Mar. 30, 2009) (unpublished) ("[T]he plaintiff details various pieces of evidence which she

contends the ALJ misconstrued . . . . The plaintiff, however, has not explained how such evidence, if fully considered, would have proven additional limitations sufficient to eliminate the possibility that [the] plaintiff could perform the sedentary work required of her past relevant work. Accordingly, error, if any, in either failing to consider such evidence or in misconstruing it, would be harmless.").  Plaintiff has made no effort to make any such showing.  (See Docket Entry 13 at 3-6.)

Nor does Plaintiff's generalized attack on the ALJ's credibility analysis withstand scrutiny.  Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements ("SSR 96-7p"), as applied by the Fourth Circuit in Craig, 76 F.3d at 594-95, provides a two-part test for evaluating a claimant's statement about symptoms.  "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'"  Id. at 594 (quoting 20 C.F.R. § 404.1529(b)).

If a claimant meets that threshold obligation, the fact finder must proceed to part two and evaluate the intensity and persistence of the claimant's pain, as well as the extent to which it affects

her ability to work.  Id. at 595.  In making this evaluation, the
fact finder:

> must take into account not only the claimant's statements
> about her pain, but also all the available evidence,
> including the claimant's medical history, medical signs,
> and laboratory findings, any objective medical evidence
> of pain (such as evidence of reduced joint motion, muscle
> spasms, deteriorating tissues, redness, etc.), and any
> other evidence relevant to the severity of the
> impairment, such as evidence of the claimant's daily
> activities, specific descriptions of the pain, and any
> medical treatment taken to alleviate it.

Id. (internal citations and quotation marks omitted).

At the outset, Plaintiff overstates the reach of Hines.  That
case holds only that, at part two of the credibility assessment,
"subjective evidence of the pain, its intensity or degree can, by
itself, support a finding of disability." Hines, 453 F.3d at 563
(emphasis added).  In other words, under the appropriate
circumstances, an ALJ may choose to rely exclusively on a
claimant's subjective complaints to find disabling pain at part two
of the credibility assessment.  However, Hines does not compel ALJs
to consider only subjective evidence at part two of the credibility
assessment, as such a requirement conflicts with the regulations,
which plainly require ALJs to consider a variety of factors in
evaluating the intensity, persistence, and limiting effects of
pain.  See 20 C.F.R. § 404.1529(c) (directing ALJs to assess a
claimant's medical history, medical signs and laboratory findings,
daily activities, testimony about the nature and location of pain,

medication and other treatment used to alleviate pain, along with medical opinions from examining and non-examining sources).

Here, the ALJ's analysis of Plaintiff's subjective complaints of pain complies with the applicable regulations. The ALJ found at part one of the credibility assessment that Plaintiff had impairments that could reasonably be expected to cause his alleged symptoms. (Tr. 28.)[7] Proceeding to part two of the credibility assessment, the ALJ found, however, that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment." (Id.)[8]

In making that part two finding, the ALJ discussed the medical history and medical signs relevant to each type of pain Plaintiff alleged, i.e., inguinal hernia pain, neck and back pain, and numbness and tingling of the hands and arms. (Tr. 28-29.)

_____

[7] Plaintiff has not alleged any error with respect to this part of the credibility inquiry. (See Docket Entry 13 at 3-6.)

[8] The Fourth Circuit recently issued a published decision, Mascio v. Colvin, No. 13-2088, ___ F.3d ___, 2015 WL 1219530 (4th Cir. 2015), which found that the ALJ erred by using, at part two of the credibility assessment, "boilerplate" language that "the claimant's statements concerning the intensity, persistence and limiting effects of [his pain] are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Mascio, 2015 WL 1219530, at *5. The court joined the Seventh Circuit in holding that this language "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'" Id. (quoting Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012)). However, the court concluded that the ALJ's use of such language would constitute harmless error if the ALJ had "properly analyzed credibility elsewhere." Id. at *6. Although in Mascio, the court did not find that the ALJ had elsewhere properly analyzed the claimant's credibility, id., in this case, the ALJ did otherwise properly analyze Plaintiff's subjective complaints of pain.

Further, the ALJ reviewed observations from five of Plaintiff's treating providers, Dr. Victor Owusu-Yaw, Dr. Steven Gross, Dr. Shawn Dalton-Bethea, Dr. Daniel Tesfaye, and Dr. Allston Stubbs, which indicate that those providers could not find a satisfactory medical explanation for Plaintiff's pain. (Tr. 29 (citing Tr. 392, 437, 680, 687, 729).)  The ALJ next evaluated Plaintiff's own statements in the medical record and at the hearing which tended to show that his pain did not qualify as disabling, including Plaintiff's statement in November 2009 that his pain ranged from one to three out of ten, his self-assessment of "good" health in September 2011, and his expressed improvement following treatments such as physical therapy and injections.  (Tr. 29-30 (citing Tr. 50, 55, 553, 705, 714).)

The ALJ rounded out her credibility analysis with discussion of the medical opinion evidence.  (Tr. 30.)[9]  In that regard, the ALJ properly assigned "little weight" to the opinion of psychologist Dr. Christopher Edwards that Plaintiff warranted

_____

[9] Although the ALJ did not discuss Plaintiff's daily activities as part of the credibility analysis, she did note, during her discussion of the severity of Plaintiff's impairments at step two of the SEP, that Plaintiff could bathe, dress himself, prepare meals, live alone, clean, do laundry, make minor repairs, do yard work, haul trash, assist his paralyzed uncle, read, watch television, attend church, visit friends, take care of his finances, shop by telephone and at the store, and use the internet and email. (Tr. 26-27.) Where the ALJ has discussed particular evidence in one area of her decision, she need not rehash such evidence at a later point. McCartney v. Apfel, 28 F. App'x 277, 279-80 (4th Cir. 2002) (rejecting challenge to ALJ's finding for lack of sufficient detail where other discussion in decision adequately supported finding and stating "that the ALJ need only review medical evidence once in his decision"); Kiernan v. Astrue, No. 3:12CV459-HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (unpublished) (observing that, where an "ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion" in other parts of his analysis).

benefits due to his "inability to work" (Tr. 743), because "the file contain[ed] no medical record from Dr. Edwards" and the Commissioner reserves the authority to decide whether a claimant can work (Tr. 30). The ALJ further found the opinions of the state agency consultants that Plaintiff could perform a limited range of light work "generally consistent with the overall evidence of record." (Id.)[10] The ALJ's credibility analysis thus complies with the regulations and Fourth Circuit law.

Finally, although Plaintiff lists a string citation of transcript pages that contain his statements about pain and accuses the ALJ of "ignor[ing]" such statements (Docket Entry 13 at 5), the ALJ indicated in her decision that she had considered the entire record (see Tr. 23, 25, 27, 28), and ALJs need not recount each piece of evidence in assessing Plaintiff's credibility, Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993). Further, the ALJ's RFC formulation included limitations to account for Plaintiff's pain, such as a restriction to no more than 20 pounds of lifting (light work), the ability to sit or stand at will, and multiple postural

---

[10] The ALJ incorrectly stated that the state agency consultants had assessed Plaintiff's RFC at the medium level of exertion, and that the ALJ gave Plaintiff "all reasonable benefit of the doubt . . . when establishing [an RFC] in the light exertional range." (Tr. 30.) In actuality, both state agency consultants limited Plaintiff's RFC to the light level of exertion, see 20 C.F.R. § 404.1567(b) (defining light exertion as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds"). (Tr. 500, 670.) Plaintiff did not raise this misstatement as an issue on judicial review. (See Docket Entry 13.) Moreover, any error remains harmless because the ALJ's RFC contains more restrictions than the RFCs assessed by the state agency consultants, including a sit/stand option and mental limitations. (Compare Tr. 27-28, with Tr. 499-506, 669-76.)

limitations. (Tr. 27-28.) More significantly, Plaintiff has failed to meet his burden to show how the ALJ's failure to discuss certain of Plaintiff's statements about pain would impact the RFC or the ALJ's step five finding that Plaintiff retained the ability to perform the jobs cited by the VE (which finding Plaintiff did not challenge, see Docket Entry 13). See Miles, 2009 WL 890651, at *14.

In short, Plaintiff's challenge to the ALJ's analysis of his subjective complaints of pain lacks merit.

## 2. Listings

Plaintiff next faults the ALJ for restricting her step three analysis to Listing 1.04 (Disorders of the Spine) and for failing to consider whether Plaintiff's impairments met or equaled all other applicable listings, "[i]ncluding, but not limited to, 11.08 for the scarring/irritation of his nerves causing pain and 12.02, 12.04, and 12.06 for his neurosis." (Docket Entry 13 at 8.) Plaintiff asserts that "the medical record includes significant evidence supportive of [his] claim" that "he may meet or equal one or more of these [l]istings." (Id. (citing Tr. 395, 440, 475, 555, 561, 569, 570, 584, 589, 590, 592, 593, 608, 615, 618, 654, 743, 745).)[11] Where such evidence exists, Plaintiff contends that the

---

[11] Notably, Plaintiff did not provide any explanation as to which specific diagnoses, medical signs, or other objective findings on the cited transcript pages constitute "evidence" relevant to the applicable listings. (Docket Entry 13 at 8.) That fact also undermines this assignment of error. See Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n. 1 (M.D.N.C. Mar. 7, 2014) (unpublished) ("A party should not expect a court to do the work that it

ALJ must provide sufficient explanation of whether Plaintiff's impairments meet or equal those listings to allow this Court "meaningful review" of the ALJ's step three findings, citing Radford v. Colvin, 734 F.3d 288, 296 (4th Cir. 2013). (Docket Entry 13 at 7-8.) Those arguments fall short.

"In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986). More specifically, when an ALJ finds that a claimant has a severe impairment and the record contains evidence of related "symptoms [that] appear to correspond to some or all of the requirements of [a listing] . . . [the ALJ must] explain the reasons for the determination that [the claimant's severe impairment] did not meet or equal a listed impairment." Id.; see also Russell v. Chater, No. 94-2371, 1995 WL 417576, at *3 (4th Cir. 1995) (unpublished) (observing that Cook "does not establish an inflexible rule requiring an exhaustive point-by-point discussion [of listings] in all cases").

To meet the requirements of Listing 11.08, Plaintiff must demonstrate that he has "[s]pinal cord or nerve root lesions, due to any cause with disorganization of motor function as described in

---

elected not to do."); see also Northwest Nat'l Ins. Co. v. Baltes, 15 F.3d 660, 662-63 (7th Cir. 1994) (observing that judges "need not excavate masses of paper in search of revealing tidbits").

Listing 11.04B." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 11.08 (italics omitted). In turn, Listing 11.04B requires "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station . . . ." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 11.04B.

Plaintiff here failed to provide sufficient evidence of spinal cord or nerve root lesions to trigger the ALJ's obligation to analyze Listing 11.08. Although several MRIs of Plaintiff's cervical and lumbar spine did show a "slight mass effect on the anterior thecal sac" (Tr. 308), "encroachment on the neural foramina" (Tr. 309), "moderate foraminal stenosis" (Tr. 524), and "mild central canal narrowing" (Tr. 766), none of the reports noted spinal cord or nerve root compression, impingement or compromise (Tr. 308-09, 524, 727, 766, 768). Moreover, Plaintiff's treatment providers who reviewed the MRIs agreed that the reports showed no spinal cord or nerve encroachment (Tr. 579, 729) and did not explain Plaintiff's radicular symptoms (Tr. 483, 729). Similarly, although nerve conduction studies on July 24, 2008, showed abnormalities at L5-S1, the report recommended "imaging correlation for radiculopathy." (Tr. 401.) A lumbar spine MRI performed just one week later identified "no abnormality" at L5-S1. (Tr. 402.) Nerve conduction studies of Plaintiff's upper extremities performed on March 10, 2011, produced normal results. (Tr. 678-79)

Similarly, Plaintiff has not shown significant and persistent disorganization of motor function in two extremities. Although Plaintiff claims "[t]he medical evidence of record documents" his "limp" (Docket Entry 13 at 8), the pages cited by Plaintiff contain no reference to a "limp" or other gait disturbance or abnormality (see Tr. 395, 440, 475, 561, 570, 584, 592, 593, 608, 618, 654). Indeed, as noted by the Commissioner, the record includes repeated findings of normal gait, motor strength, reflexes, and sensation (see Docket Entry 15 at 14 (citing Tr. 392, 395, 412, 552, 593, 732, 763, 764, 776, 805, 842).) Accordingly, the ALJ did not err by failing to discuss whether Plaintiff's impairments met or equaled Listing 11.08.

With regard to Plaintiff's neurosis, although he asserts the applicability of Listings 12.02 (Organic Mental Disorders), 12.04 (Affective Disorders), and 12.06 (Anxiety-Related Disorders), he again provides the Court with no explanation as to how his neurosis even applies to (let alone meets or equals) those listings, beyond another string cite of allegedly relevant transcript pages. (Docket Entry 13 at 8 (citing Tr. 555, 569, 570, 589, 590, 615, 743, 745.) However, those pages do not provide sufficient evidence relevant to the requirements of Listings 12.02, 12.04, and 12.06 to have triggered the ALJ's obligation to specifically analyze whether Plaintiff's neurosis met or equaled those listings.

In sum, the ALJ did not err by failing to analyze Listings 11.08, 12.02, 12.04, and 12.06 at step three of the SEP.

## 3. Third Party Function Report

In Plaintiff's third and final issue on review, he argues that the ALJ erred by failing to discuss the third party function report completed by his mother. (Docket Entry 13 at 8-10 (citing Tr. 226-234).) In particular, Plaintiff emphasizes the significance of his mother's statements that Plaintiff had experienced pain "most of the time" since his hernia surgery in December 2007 (Tr. 234), that his pain affects his ability to lift (Tr. 231, 232) and get along with others (Tr. 232), and that he does not handle stress or changes in routine well (Tr. 233). (Id. at 9.) According to Plaintiff, the ALJ's oversight does not constitute harmless error, because "the ALJ found [Plaintiff's] testimony . . . not credible and [his mother's] statement supports and corroborates [his] testimony." (Id.) Plaintiff's contentions provide no basis for relief.

In addition to evidence from "acceptable medical sources," 20 C.F.R. § 404.1513(a) (licensed medical or osteopathic physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists), the ALJ may consider evidence from other non-medical sources, such as statements from spouses, parents, caregivers, siblings, other relatives, friends, neighbors, and clergy, to determine the

19

severity of a claimant's impairments and his or her residual ability to work. 20 C.F.R. § 404.1513(d)(4); Social Security Ruling 06-03p, <u>Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies</u>, 2006 WL 2329939, at *2 (2006) ("SSR 06-03p"). "[I]nformation from [non-medical sources] may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function[;]" however, in considering evidence from these sources, "it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p, 2006 WL 2329939, at *2, *6.

Here, the ALJ failed to discuss the third party function report submitted by Plaintiff's mother. (Tr. 20-32.) However, such an omission by the ALJ constitutes harmless error, where, as here, the third party function report "does not materially contradict" the evidence supporting the ALJ's RFC determination. <u>Morgan v. Barnhart</u>, 142 F. App'x 716, 723 (4th Cir. 2005). The United States District Court for the Western District of North Carolina recently discussed this issue in some detail:

> Generally, failure by the Commissioner to consider an
> entire line of evidence falls well below the minimal

level of articulation required by the Social Security Act. <u>Diaz v. Chater</u>, 55 F.3d 300, 307 (7th Cir. 1995). However, an ALJ is not tasked with the "impossible burden of mentioning every piece of evidence" that may be placed into the Administrative Record. <u>Parks v. Sullivan</u>, 766 F. Supp. 627, 635 (N.D. Ill. 1991). The issue of whether it is reversible error for an ALJ to fail to mention corroborative lay witness opinions has been squarely addressed by a number of circuits, as discussed by the district court in <u>Orcutt v. Barnhart</u>, 2005 WL 2387702, *8-9 (C.D. Cal. 2005):

> As long as substantial evidence supports the ALJ's conclusion and the ALJ explains why "significant probative evidence has been rejected," an ALJ's failure to discuss lay witness testimony constitutes harmless error. <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1395 (9th Cir. 1984). In <u>Vincent</u>, although the ALJ did not discuss the plaintiff's son's testimony in his hearing decision, the court held that such an omission did not require reversal because the medical evidence supported the ALJ's decision that the plaintiff was not disabled. <u>Id.</u>

> The view that an ALJ need not discuss every piece of evidence, even when that evidence is from a lay witness, has found support in the Seventh and Eighth Circuits, especially when lay witness testimony does little more than corroborate a plaintiff's own testimony. In <u>Books v. Chater</u>, a Seventh Circuit decision, the court held that "[a]ll we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that [he] considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning.'" <u>Books v. Chater</u>, 91 F.3d 972, 980 (7th Cir. 1996) (quoting <u>Carlson v. Shalala</u>, 999 F.2d 180, 181 (7th Cir. 1993) (quoting <u>Stephens v. Heckler</u>, 766 F.2d 284, 287 (7th Cir. 1985))). Since plaintiff's brother's testimony in <u>Books</u> "did not constitute a separate 'line of evidence,'" but "served strictly to reiterate, and thereby corroborate, [plaintiff's] own testimony concerning his activities and limitations" –

and the plaintiff's testimony was found by the
ALJ to be "untenable" when contrasted with his
daily activities and the medical evidence –
the court held that the ALJ's failure to
specifically discuss the plaintiff's brother's
testimony was not error. <u>Books</u>, 91 F.3d at
980. Similarly, in <u>Young v. Apfel</u>, the Eighth
Circuit held that "[a]lthough specific
articulation of credibility findings is
preferable, we consider the lack thereof to
constitute a deficiency in opinion-writing
that does not require reversal" as long as the
ALJ's "ultimate finding is supported by
substantial evidence in the record." <u>Young v.
Apfel</u>, 221 F.3d 1065, 1068 (8th Cir. 2000).
In <u>Young</u>, since the same evidence the ALJ used
to discount the plaintiff's testimony "also
support[ed] discounting the testimony of [the
plaintiff's] husband," the court held that
"the ALJ's failure to give specific reasons
for disregarding [the husband's] testimony
[was] inconsequential." <u>Id.</u>

<u>Id.</u> at 8-9. While an opinion of a district court in the
Ninth Circuit is not controlling in the Fourth Circuit,
the court finds the reasoning of the <u>Orcutt</u> court to be
highly persuasive.

. . .

As in <u>Orcutt</u>, the issue is not whether the ALJ failed to
mention a particular piece of evidence in his decision,
but whether the ALJ's final decision denying benefits is
supported by substantial evidence contained in the
Administrative Record. Here, the ALJ's ultimate findings
concerning plaintiff's deficits concerning concentration
and memory find support in substantial evidence of
record.

<u>Blackwell v. Colvin</u>, No. 1:14-cv-00085-MOC, 2014 WL 7339132, at *7-

8 (W.D.N.C. Dec. 23, 2014) (unpublished).

As recognized by the Commissioner (<u>see</u> Docket Entry 15 at 18-

19), the report submitted by Plaintiff's mother does not materially

contradict the ALJ's RFC determination. Plaintiff's mother stated

that Plaintiff has experienced pain "most of the time" since his December 2007 surgery (Tr. 234), but she did not describe the degree of his pain. She indicated Plaintiff's pain limits his ability to lift (Tr. 232), but also indicated that Plaintiff remained able to prepare his own meals, assist his disabled uncle, listen to his favorite talk shows, mow the lawn for two homes using a ride-on mower, perform simple car repairs, wash laundry, use a computer and grocery shop (Tr. 226). The ALJ's limitation of Plaintiff to light work with the ability to sit or stand at will, along with numerous postural limitations, amply accommodates Plaintiff's mother's statements about pain and limits on lifting.

The ALJ's RFC determination also adequately encompasses Plaintiff's mother's statements regarding Plaintiff's difficulty getting along with others (Tr. 232)[12] and tolerating stress and changes in routine (Tr. 233): the ALJ limited Plaintiff to work that involved <u>no</u> contact with the public, at a non-production pace, and with no complex decision-making, constant changes, or dealing with crises (Tr. 28).

In conclusion, the ALJ's failure to discuss the third party function report submitted by Plaintiff's mother constitutes at most

---

[12] Plaintiff's mother stated that Plaintiff's condition impacted his ability to get along with others, but additionally noted that Plaintiff had "not had many close friends since high school" and that she was "not sure" Plaintiff's condition had impacted his ability to socialize. (Tr. 232.) She also remarked that Plaintiff's social activities had not changed since the onset of his illness (<u>id.</u>), that he gets along "very well" with authority figures and had never been fired from a job (Tr. 233).

harmless error, because that report does not materially contradict the ALJ's RFC determination.

### III. CONCLUSION

Plaintiff has established no grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for a Judgment Reversing or Modifying the Decision of the Commissioner of Social Security, or Remanding the Cause for Rehearing (Docket Entry 12) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 24, 2015